IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LESTER HOWARD,** | : | |
|     **Plaintiff,** | : | |
| | : | |
|     v. | : | **CIVIL ACTION NO. 19-2288** |
| | : | |
| **CITY OF PHILADELPHIA POLICE** | : | |
| **DEPARTMENT,** *et al.*, | : | |
|     **Defendants.** | : | |

**McHUGH, J.**                                                                                                                   **June 6, 2022**
**MEMORANDUM**

      This is an action in which *pro se* Plaintiff alleges that Defendants violated his constitutional rights in events taking place around two arrests, as well as the prosecution that followed one of the arrests. Specifically, Plaintiff asserts the following claims: violation of his Fourth Amendment right to be free from excessive force; a *Brady* claim under the Fourteenth Amendment; a violation of substantive due process; federal conspiracy; together with state law claims of assault and battery, civil conspiracy, intentional infliction of emotional distress, spoliation, and abuse of process. Defendants move for summary judgment as to all claims except those involving excessive force, which I will grant.

    **I.**    **Factual Allegations and Procedural Posture:**

      Plaintiff Lester Howard's Complaint alleges constitutional violations related to a series of interactions with Philadelphia police officers. First, on July 3, 2017, Plaintiff alleges that Officer Marvis Knight and his partner, John Doe #1, approached him to investigate a report of a male throwing trash. Compl. at 2, ECF 2. Plaintiff states that after telling the officers that he was upset because some children had stolen his bike, the officers slammed him on their vehicle and dragged

him on the ground, injuring his left knee and head. *Id*. Plaintiff was arrested and taken to the police station, but later let go "as a result of his subsequent injuries." *Id*. at 2-3. He alleges that he was cited for disorderly conduct and that Officer Knight lied in the citation by stating that Plaintiff was released at the scene, when he was actually arrested and taken to the station. *Id*. at 3. Plaintiff reports that he spent three days recovering in the hospital following the officers' use of force against him and that he now walks with a limp due to those injuries. *Id*. While at the hospital, Plaintiff called the police and reported the incident. *Id*. Subsequently, the police interviewed him and stated that his complaint would be investigated. *Id*. Several days later, Officer Knight's partner, John Doe Officer, approached Plaintiff to ask him why he had put in a complaint. *Id*. at 4.

Plaintiff raises several claims related to the events of July 3rd and 4th. First, he asserts claims of excessive use of force and falsifying police paperwork. *Id*. at 3. Plaintiff also states that there is missing surveillance video from July 3rd and 4th that would have shown this assault.[1] *Id*. at 4. He also states that his July complaint and the resulting investigation caused the officers to be biased against him. He alleges this is relevant to the remainder of his claims, which stem from his arrest a month later in August 2017. *Id*.

On August 27, 2017, Plaintiff's neighbor, Vincent Leonardo, called the police around 2 a.m. to report a burglary in progress. Compl. at 5; Police Report, ECF 29-4, Ex. B-1. Officer Knight responded to the call. Compl. at 5. Leonardo stated that he had seen a male enter a property under construction located at 504 Mercy Street. Police Report, ECF 29-4, Ex. B-1; Leonardo Interview, ECF 29-6, Ex. B-3; Arrest Memo, ECF 29-8, Ex. B-5. Officer Knight reports that he went to the rear of the property and saw Plaintiff attempting to hide against a wall. Police Report,

---

[1] The alleged source of this first surveillance video is not clearly pleaded.

ECF 29-4, Ex. B-1.  Plaintiff tried to flee and was stopped at 5th and Snyder Streets.  *Id*.  Plaintiff alleges that "out of view of the surveillance camera he was beaten by Officer Knight with an asp striking Plaintiff in the head, shoulders, arms, and legs."  Compl. at 5.  At that point, he was "handcuffed and thrown into Officer Knight's vehicle."  *Id*.  Plaintiff told another officer, John Doe Sgt. #2, that he had been beaten by Knight and needed medical attention and told John Doe Sgt. #2 to look at and preserve the surveillance video.  *Id*.  Officer Knight called the owner of the 504 Mercy Street, who told them that no one had permission to enter the residence.  Police Report, ECF 29-4, Ex. B-1.

It is undisputed that Plaintiff was then transported to a detention unit, but the parties dispute what occurred during transport.  Plaintiff alleges that when he was being transported in Officers Knight and Marrero's patrol car, hands cuffed behind his back, Marrero "struck [him] in the face with a closed fist."[2]  Compl. at 6.  He alleges that the video of this transport is missing.  *Id*.  In contrast, Officer Marerro maintains that during transport, Plaintiff began to kick at the rear door and window of the car.  Police Reports, ECF 29-4, Ex. B-1 and ECF 29-7, Ex. B-4.  Marrero states that he kept the door slightly open to avoid Plaintiff breaking the window while waiting for an emergency patrol wagon.  *Id*.  Plaintiff eventually kicked the door fully open, at which point Marerro tried to shut it, injuring Marrero's hand in the process.  *Id*.

Around 3 a.m. on August 27, Mr. Leonardo gave a statement to Detective Kevin Duffy describing the incident and signed a photograph of Plaintiff identifying him as the person who he

---

[2] Officer Marrero's involvement up to this point is not clear from the record.  Plaintiff states that he was transported in Officer Knight and Marrero's patrol car, but earlier refers to another officer at the scene as John Doe Sgt. #2.  The only police personnel listed in the investigation and arrest report are Knight, Marrero, and Duffy.  Officers Knight and Marrero are listed as witnesses.  Exs. B-1, B-2.  There is a signed affidavit from Detective Duffy stating that he "was not on location at the scene when Mr. Howard was apprehended by Officer Marvis Knight."  Ex. B.  Detective Duffy avers that, as the lead investigator, he prepared the 75-49 Investigation Report (Ex. B-1) and the arrest report (Ex. B-2), as well as interviewed Mr. Leonardo at the station.  *Id*.

had observed entering the residence.  Leonardo Interview, ECF 29-6, Ex. B-3.  Mr. Leonardo also explained that he had seen Plaintiff enter the property on previous occasions on August 25th and 26th.  *Id.*

Plaintiff was subsequently charged by the Philadelphia District Attorney's Office with burglary, criminal trespass, and resisting arrest.  CP Docket, ECF 29-12, Ex. D.  A preliminary hearing was held on September 12, 2017, at which time Mr. Leonardo testified that had seen Plaintiff entering the house through surveillance video feed from a camera that he had set up on his property.  Preliminary Hearing Transcript, ECF 29-11 at 9:2-24.  Defense counsel moved to preserve this footage of the incident at the preliminary hearing, which the Court granted.  *Id*. at 9:7-8.  Plaintiff was ultimately held for court on the charges of burglary and criminal trespass.  *Id*. at 6:12.  Plaintiff states the he was detained pretrial for over three months.  Compl. at 13.  The charges against him were nolle prossed on November 26, 2018.  CP Docket, ECF 29-12, Ex. D.

Plaintiff further alleges that the Defendants conspired to deprive him of his due process rights by "suppressing and destroying in bad faith evidence that would have affected the decision to prosecute Plaintiff for criminal charges related to the incidents."  Compl. at 7.  He states that police coached Leonardo into identifying Plaintiff and that the police reports were doctored and falsified.  *Id.*  He states that Marrero, Knight, and Leonardo conspired together to suppress evidence and conceal falsehoods.  *Id.*  He further alleges that the prosecution team failed to produce favorable evidence and destroyed exculpatory evidence by erasing the video footage from July 3, July 4, August 25, and August 26.  *Id.*  He also claims that defendants altered or edited surveillance footage, which amounts to spoliation and tampering, as it "could have included potentially exculpatory evidence or at the very least show, evidence that proves or disproves whether officer

4

Marerro had a conversation with Plaintiff and punched him in the jaw in the back of Marrero's cruiser." *Id*. at 8.

The City of Philadelphia Police Department, Detective Kevin Duffy, Police Officers Ne'keea Halsey, Mavis Knight, and Lee Marerro filed a partial motion for summary judgment, requesting dismissal of all claims against them except the excessive force, assault and battery claims against Officers Knight and Marrero.[3] Plaintiff's deadline to file any response in opposition having expired without Plaintiff submitting any response, the motion is ripe for my consideration.

## II. Standard of Review

The party's motion for summary judgment is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Plaintiff is *pro se*, so is held to a less stringent standard than trained counsel. *Giles v. Kearney,* 571 F.3d 318, 322 (3d Cir. 2009). Although *pro se* pleadings and filings must be "construed liberally," the same summary judgment standard applies to *pro se* litigants. *See Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010).

Although Defendants' Motion is unopposed because Plaintiff has not filed any response, a plaintiff's failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. V. I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). Rather, the Court "still must find for itself that there is no genuine dispute of material fact and that the movant deserves judgment as a matter of law." *United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021) (citing Fed. R. Civ. P. 56(a) and *Anchorage Assocs.,* 922 F.2d at 175).

---

[3] All charges against Mr. Leonardo were previously dismissed, per my Order docketed at ECF 11.

### III. Discussion

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, even construing the record in the light most favorable to Plaintiff and taking into account his *pro se* status, there is no dispute as to material facts such that a reasonable juror could find for Plaintiff as to the claims challenged in Defendants' partial motion for summary judgment, so Defendants' motion will be granted.[4]

    a. <u>Claims Against the Philadelphia Police Department Are Dismissed</u>

Plaintiff names the City of Philadelphia Police Department as a Defendant here. Following the decision in *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), courts within this district have concluded that although a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not. *See e.g., DeBellis v. Kulp*, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001); *Irving v. Borough of Darby*, 937 F. Supp. 446, 450 (E.D. Pa. 1996). *See also Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n. 4 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability"). Accordingly, the City of Philadelphia Police Department is not a proper Defendant in this case under Section 1983 and all claims against it will be dismissed with prejudice.

---

[4] Defendants have also raised a defense of qualified immunity, arguing that Defendants are entitled to qualified immunity because Plaintiff cannot establish on the record evidence that they violated any of the federal statutory or constitutional rights for which he brought suit. As I grant summary judgment on the merits, I need not decide the issue of qualified immunity. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 126 n. 1 (3d Cir. 2001) (noting that the issue of qualified immunity was not reached by District Court because it granted summary judgment on the merits and declining to decide the issue of qualified immunity as to the defendants for whom it affirmed summary judgment).

Even if I construe the claim as one against the City itself, Plaintiff still has not stated a claim under *Monell*. "[A] § 1983 claim against a municipality may proceed in two ways. A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries or that they were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal citations omitted); *see also Monell,* 436 U.S. at 690–91. Under the first theory, the plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Under the second theory, the plaintiff must show that the failure to train or supervise "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact," *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014), which is usually accomplished by showing a pattern of violations by untrained employees. Plaintiff has not alleged any municipal custom or policy that led to the violation of his constitutional rights, nor has he pleaded facts to support an inference of deliberate indifference. Thus, Mr. Howard has failed to plead any basis for municipal liability.

b. <u>All Counts Against Officer Ne'Keea Halsey Are Dismissed Due to Lack of Personal Involvement</u>

Plaintiff's claims against Officer Halsey fail as a matter of law because, although the officer is named in the case caption as a Defendant, Plaintiff lodges no specific allegations against Officer Halsey. "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). While personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence, such allegations must be made with appropriate particularity. *See id*. Here, there is no record evidence relating to the officer's involvement in the complained of violations, so the claims against

7

Officer Halsey will be dismissed with prejudice.  *See also* Officer Halsey's Affidavit (stating that the Officer "had no personal involvement in any of the incidents or events alleged in the plaintiff's complaint.").  ECF 29-2, Ex. A ¶ 7.

    c.  <u>Plaintiff's *Brady* Claim Is Not Supported by Evidence in the Record</u>

"Under *Brady v. Maryland*, the prosecution's suppression of evidence favorable to a criminal defendant violates due process when the evidence is material to guilt or punishment.  To establish a *Brady* violation, it must be shown that (1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment." *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  *Brady* "reaches beyond evidence in the prosecutor's actual possession" to evidence that "the prosecutor knew or should have known" about.  *Id*. (*quoting United States v. Joseph*, 996 F.2d 36, 39 (3d Cir.1993)).  Significantly for this case, the undisclosed evidence must be material for purposes of the inquiry.

Here, Plaintiff contends that there is missing, exculpatory video surveillance from 500 Mercy Street from July 3rd and 4th that would show that Officer Knight assaulted Plaintiff.  Plaintiff also states that only a portion of the video from August 25 and 27 was provided and that the video provided in discovery showed the Plaintiff entered the property through a "wide open front door" and then he "locked the door behind him once inside."  Compl., ECF 2, Ex. A at ¶ 12.[5]  He also argues that the "video time-line [was] out of sync with the chain of events."  Compl. at 9.

---

[5] Attached to the Complaint as Exhibit A is a counseled Motion to Dismiss filed in Plaintiff's underlying burglary case on the grounds that the failure to produce or preserve the surveillance video from all relevant dates after the judge had ordered it to be preserved constitutes a *Brady* violation.  The Motion does not include allegations of tampering.

8

First, the record is absent of any facts tending to establish the Defendants failed to disclose or concealed exculpatory evidence. Plaintiff's Complaint contains sweeping, conclusory allegations of tampering without pleading any facts to support the allegations. At the summary judgment stage, the Court need not accept conclusory allegations as true. *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). In addition, although Mr. Howard's defense counsel in the underlying case moved to preserve the footage at the preliminary hearing, the surrounding context indicates that the footage in question was limited to what Mr. Leonardo observed on August 27th, with no suggestion that the request for preservation also encompassed potential recordings of the events of July 3rd, 4th, or August 26th.

And even if Plaintiff had a factual basis for a *Brady* claim, it would still fail because he has failed to meet *Brady's* materiality requirement. Evidence "is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Smith v. Holtz*, 210 F.3d 186, 197 (3d Cir. 2000) (*quoting United States v. Bagley*, 473 U.S. 667, 682 (1985)). Here, the charges against Plaintiff were dismissed,[6] so disclosure of any potentially exculpatory material would not have resulted in a different or more favorable outcome. Given the dismissal, any failure to disclose evidence did not amount to a due process violation.

### d. There is Insufficient Evidence to Support Plaintiff's Substantive Due Process Claim

Seemingly related to his *Brady* claim, Plaintiff also states that Defendants "violated his substantive due process rights by doctoring and alter[ing] scientific evidence, which led to his

---

[6] Specifically, the Commonwealth requested that the charges be *nolle prosequi*, which "is a voluntary withdrawal by the prosecuting attorney of present proceedings on a particular bill of indictment." *Commonwealth v. Whitaker*, 467 Pa. 436, 359 A.2d 174, 177 (1976).

three months incarceration." Compl. at 9.[7] As a threshold issue, this claim is too vague and ambiguous to be actionable. *See Brightwell v. Lehman,* 637 F.3d 187, 194 (3d Cir. 2011). Assuming this to be a Fourteenth Amendment claim predicated on the fabrication of evidence, the record offers nothing more than conclusory allegations of tampering and does not reflect genuine dispute as to material fact regarding the actions of the police to alter evidence. *See Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014) (clarifying that fabrication of evidence can constitute a stand-alone claim). More fundamentally, a fabrication of evidence claim under § 1983 is available as a stand-alone claim only when "a defendant has been convicted at a trial at which the prosecution has used fabricated evidence" with "a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted." *Id*. at 294. As noted above, Plaintiff was not convicted here. Summary judgment as to this claim is therefore appropriate.

    e. <u>There is Insufficient Evidence to Support Plaintiff's "Federal Deliberate Indifference" Claim</u>

Plaintiff asserts a claim for what he terms "federal deliberate indifference" in violation of § 1983. This claim is totally lacking in clarity and not clearly connected to the factual allegations. *See Brightwell,* 637 F.3d at 194. If I construe Mr. Howard to be alleging deliberate indifference to medical needs in violation of the Fourteenth Amendment, the claim still fails. *see Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581–82 (3d Cir. 2003) (denial of medical care claims brought by pretrial detainees arise under Fourteenth Amendment). The Third Circuit has recognized that "pretrial detainees are entitled to at least as much protection as convicted prisoners and that decisions interpreting the Eighth Amendment serve as useful analogies" for analyzing

---

[7] Defendants do not specifically address this claim in this motion, but move for summary judgment as to "all claims" "with the sole exception" of the excessive force and assault and battery claims against Officers Knight and Marerro. The claim is only listed as "substantive due process" in the list of claims at the start of the Complaint and referenced obliquely and vaguely in a small portion of the Complaint.

suits alleging that a pretrial detainee received inadequate medical care. *Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir. 1987) (internal citation omitted); *see also Natale*, 318 F.3d at 581 (noting that in the past the Court has "found no reason to apply a different standard than that [for prisoners' claims of inadequate medical care under the Eighth Amendment] when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment."). To establish an Eighth Amendment claim for inadequate medical care under § 1983 a plaintiff must make (1) a subjective showing that the defendants were deliberately indifferent to [his or her] medical needs and (2) an objective showing that those needs were serious." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (cleaned up). Here, Plaintiff has not alleged that Defendants denied him medical care.[8] In July, while Mr. Howard alleges that he was injured, he states that he was hospitalized and received treatment. In August, he states that he told the officers that he needed medical care, but he never pleads that he didn't receive such care as he needed. Therefore, Defendants' motion for summary judgment will be granted as to the deliberate indifference claim.

    f.   <u>There is No Evidence in the Record to Support Plaintiff's Federal Conspiracy Claim</u>

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law reached an understanding to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018) (cleaned up). The allegations here do not appear to be directed to the use of excessive force, and as I have concluded the record does not support other deprivations of any right, a claim alleging conspiracy necessarily fails. *Id.* at 295 (noting that the plaintiff must establish "that the object of the conspiracy was the deprivation

---

[8] As previously noted, Defendants have not moved for summary judgment as to the excessive use of force or assault and battery claims against Officers Knight and Marrero.

of a federally protected right."). Moreover, "the plaintiff must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Id*. at 295 (cleaned up). Here, there is no evidence from which a reasonable juror could infer a conspiratorial agreement. The only pleaded fact that could support the existence of a conspiracy is that an unknown officer followed up with Mr. Howard to ask him why he had filed a complaint against Officer Knight, which Plaintiff says shows that the officers were upset about the complaint and biased against him. Standing alone, such an allegation is wholly insufficient for a reasonable finder of fact to infer conspiracy.

g. There Is No Evidence in the Record to Support the State Conspiracy Claim:

Similarly, Plaintiff's state civil conspiracy claim fails. "To prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). Plaintiff must proffer facts establishing a "combination, agreement, or understanding among all or between any of the defendants." *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974). For the same reasons discussed in the context of the federal conspiracy Plaintiff has failed to substantiate any "unlawful act" or any conspiratorial agreement or understanding. Summary judgement is therefore appropriate.

h. Plaintiff's Intentional Infliction of Emotional Distress Claim Fails

To recover on an IIED claim, a plaintiff must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998).[9] Described another way, "[i]t has not been enough that the defendant has acted with intent

---

[9] The Pennsylvania Supreme Court has yet to decisively rule on whether intentional infliction of emotional distress is a valid cause of action. *See Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) ("[T]his court has

which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id.* (*quoting* Restatement (Second) of Torts §46, comment d). In addition, a plaintiff must produce "competent medical evidence" supporting such claim. *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987); *Bolden v. Se. Pennsylvania Transp. Auth.*, 21 F.3d 29, 35 (3d Cir. 1994).

Here, the conduct alleged would not suffice to state a claim, and Plaintiff has not produced competent medical evidence that he suffers or suffered from emotional distress as a result of the alleged outrageous conduct.

    i. <u>Plaintiff's Abuse of Process Claim Fails:</u>

To state claim for abuse of process under Pennsylvania law, a plaintiff must prove: "that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998), *appeal denied*, 729 A.2d 1130 (Pa. 1998). "In support of this claim, the [plaintiff] must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process ... and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* "The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it." *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987) (cleaned up).

---

not expressly adopted section 46 of the Restatement [setting out an IIED claim]. … [W]e too leave to another day the issue of whether section 46 of the Restatement should be the law of Pennsylvania."). The Third Circuit has predicted that Pennsylvania will recognize such a tort. *See Pavlik v. Lane Ltd./Tobacco Exporters Int'l*, 135 F.3d 876, 890 (3d Cir. 1998).

Here, there is no evidence that suggests that the criminal action against Mr. Howard was later perverted or used for a purpose other than intended by the law. *See Rose v. Bartle*, 871 F.2d 331, 350 n. 17 (3d Cir. 1989) ("In contrast to a section 1983 claim for malicious prosecution, a section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'") (*quoting Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir.1977)).

Although Plaintiff contends that he was arrested and beaten in August in retaliation for having filed a complaint against Officer Knight a month prior, he points to no evidence beyond his own speculations to support this theory. Moreover, the record reflects that the officers were called to the location in August by a neighbor for a burglary in progress and that they witnessed Plaintiff near the rear of the property trying to hide against a wall. The investigation was thereafter turned over to the District Attorney's Office, which approved the charges against Plaintiff for burglary, criminal trespass, and resisting arrest. Duffy Decl. ¶¶ 12, 14-15, Ex. B. Finally, the charges were ultimately nolle prossed. *See Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 858 (E.D. Pa. 2000) (granting summary judgment on abuse of process claim where plaintiff did not maintain that action was started legitimately and perverted and did not produce evidence that defendants desired anything other than a criminal conviction).

j. Plaintiff's Spoliation Claim Fails

Plaintiff alleges a spoliation claim related to the allegedly destroyed or tampered with video footage. This claim also fails, because spoliation is not recognized as a distinct cause of action under Pennsylvania law. *See Pyeritz v. Com.*, 32 A.3d 687 (Pa. 2011) (holding that there is no cause of action for the tort of spoliation of evidence).

## IV. Conclusion

For the reasons set forth above, Defendants' Partial Motion for Summary Judgment will be granted in all respects.   An appropriate order follows.


　　　　　　　　　　　　　　　　　　　　/s/ Gerald Austin McHugh
　　　　　　　　　　　　　　　　　　　United States District Judge